UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GEORGE CAMPBELL PAINTING | : | |
| CORP. and E. DASKAL CORP., | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3-05-cv-00716 (JCH) |
| | : | |
| ELAINE CHAO | : | |
| Defendant | : | |
| | : | JANUARY 23, 2006 |

**RULING ON DEFENDANT'S MOTION TO DISMISS [Dkt. No. 8]**

**I.  INTRODUCTION**

Plaintiffs seek judicial review of the decision of the Secretary of the United States

Department of Labor, as entered by her designee, the Administrative Review Board

(ARB), in the matter of George Campbell Painting Corp. and E. Daskal Corporation,

ARB case No. 01-069.[1]  The Secretary moves to dismiss the plaintiffs' complaint

pursuant to both Rule 12(b)(1), Fed.R.Civ.P. (lack of subject matter jurisdiction) and

Rule 12(b)(6) (failure to state a claim).

**II.  STANDARD OF REVIEW**

In deciding a motion to dismiss, the court takes the allegations of the Complaint

as true, and construes them in a manner favorable to the pleader.   Hoover v. Ronwin,

466 U.S. 558, 587 (1984); see Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d

Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overrruled on other grounds

---

[1] The plaintiffs also seek judicial review of the Administrative Law Judge (ALJ) decision that the ARB decision reviewed.  The court cannot review the ALJ decision because it was not a final agency action.  See 5 U.S.C. § 704; Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003).

1

by Davis v. Scherer, 468 U.S. 183 (1984).  In addition to the Complaint, the court may

consider the administrative decision that the plaintiffs ask it to review, even though it is

not attached to the Complaint.  See Cortec Industries, Inc. v. Sum Holding L.P., 949

F.Supp.2d 42 (2d Cir. 1991) (holding that a court may consider documents not attached

to the complaint in deciding a 12(b)(6) motion to dismiss if plaintiffs have undisputed

notice of their contents and they serve as the basis of the plaintiff's claim); B.H. v.

Southington Bd. of Educ., 73 F.Supp.2d 194, 197 n.3 (D. Conn. 2003) (considering, in

deciding a 12(b)(1) and 12(b)(6) motion to dismiss, facts contained in a state

administrative hearing officer's decision that was integral to the complaint) (internal

citations omitted).  The court must draw all reasonable inferences in the plaintiff's favor.

See, e.g., Yung v. Lee, --- F.3d ----, 2005 WL 3387699 (Dec. 13, 2005) (discussing

Rule 12(b)(6) motion to dismiss); Lunney v. United States,  319 F.3d 550, 554 (2d Cir.

2003) (internal citations omitted) (discussing Rule 12(b)(1) motion to dismiss).

       "A case is properly dismissed for lack of subject matter jurisdiction under Rule

12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate

it." Marakova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  A plaintiff generally

has the burden of proving by a preponderance of the evidence that jurisdiction exists.

Id.

       A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests

only the adequacy of the complaint.  United States v. City of New York, 359 F.3d 83, 87

(2d Cir. 2004).  A Rule 12(b)(6) motion can be granted only if "it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  A Rule 12(b)(6) motion to

dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint.  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Id. (quotation omitted).  However, "bald assertions and conclusions of law will not suffice" to meet this pleading standard.  Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996).

## III.  FACTUAL BACKGROUND[2]

In the fall of 1992, George Campbell Painting Corpation ("Campbell") was awarded two contracts by the Connecticut Department of Transportation ("ConnDOT"). ConnDOT engaged Campbell as a general contractor and painter for the rehabilitation of the Gold Star Bridge in New London County, Connecticut.  Both contracts received federal funds under the Federal-Aid Highways Act, 23 U.S.C. § 101 et. seq., and thus were subject to the prevailing wage requirements of the Davis-Bacon Act ("DBA"), 40 U.S.C. § 3141, et. seq., and its implementing regulations, 29 C.F.R. Part 5.  In June 1993, Campell entered into an agreement with E. Daskal Corporation ("Daskal"), under which contract Daskal would provide labor support services for the Gold Star project.

Beginning in June 1996, a regional compliance officer from the United States Department of Labor ("DOL") investigated the wages being paid by the plaintiffs for certain work performed on the Gold Star project.  The investigator concluded that the

---

[2]The facts in this section are taken primarily from the Complaint.  Where the content of  the ARB decision in the plaintiffs' case is relevant to the present motion, the court considers the decision as well, drawing all reasonable inferences drawn in the plaintiffs' favor.  See Part II, supra; In the Matter of George Campbell Painting Corp. and E. Daskal Corp., ARB Case No. 01-069 (Oct. 15, 2004) [Dkt. No. 9-2] [hereinafter "ARB Decision"].

plaintiffs had failed to pay certain employees the prevailing wages set by the Secretary pursuant to the DBA.[3]   The DOL initially determined that Campbell had a wage liability of $270,842.90 for underpaying employees assigned to collect grit that resulted from the abrasive blast cleaning process used on the bridge.  Campbell had paid such employees at a wage rate 30¢ above the prevailing rate for "laborers," and the DOL asserted that Campbell should have paid these employees at the higher "painters'" rate.  The DOL determined that Daskal owed $250,914.15 in back wages for allegedly failing to pay a "laborers'" rate to individuals employed as "go-fers," and a "safety boat operators'" rate to safety boat operators.  The plaintiffs challenged these investigatory findings.  Following a 45-day hearing and submission of briefs by the parties, an Administrative Law Judge (ALJ) ruled against the plaintiffs, adopting virtually the entire post-hearing brief submitted by the Secretary.

The plaintiffs timely appealed this decision to the Administrative Review Board, which affirmed the ALJ's decision in the instant case and four consolidated cases.  In a forty-page decision, the ARB held that the record, which consisted of a 10,609-page hearing transcript and over 600 exhibits, "supports the ALJ's findings of fact" and that the ALJ's "conclusions of law are legally correct," even though the ALJ had followed the discouraged practice of adopting wholesale the DOL's brief.  ARB Decision at 11 [Dkt. No. 9-2].   The ARB denied the plaintiffs' claims of estoppel against the government, holding that "actions or inactions of ConnDOT cannot estop the DOL."

The plaintiffs challenge the Secretary's decision on the following grounds:

---

[3]Payment of DBA wages on this project was mandated by the Federal-Aid Highways Act, 23 U.S.C. § 113.

- In Count I, they allege that the DOL should be estopped from imposing liability on them "for any alleged misclassification of workers that was the product of affirmative conduct or misrepresentations by officials of ConnDOT," which allegedly acted as an agent of the DOL.  They allege that the ARB's ruling that estoppel was not compelled by the APA and constitutional due process "was arbitrary and capricious, an abuse of discretion and was not in accordance with law."  Compl. at ¶ 35 [Dkt. No. 1].

- In Count II, they allege that the ARB's holding that it was "incumbent upon the [plaintiffs] to go beyond the list of job classifications in the wage determination to ascertain the actual local area practice," Compl. at ¶ 38 (quoting ARB Dec. at 25) [Dkt. No.1], improperly relieved the DOL of its constitutional, statutory, and regulatory responsibility to give contractors fair warning of the proper classification of workers on Davis-Bacon projects.  They argue that this holding violated the DBA, APA, and Due Process clause of the Constitution.

- In Count III, the plaintiffs claim that the ALJ "made no independent findings or conclusions of law, but instead improperly adopted wholesale the post-hearing brief submitted by attorneys for the Administrator" of the Wage and Hour Division, thereby "abdicat[ing] his responsibility to make credibility determinations."  Compl. at ¶ 40 [Dkt. No. 1].  They allege that the "ARB improperly upheld the Administrative Law Judge's actions, in violation of the Davis-Bacon Act, the Administrative Procedure Act, and the Due Process Clause of the Constitution." Id.

- Count IV contains a number of different allegations.  The plaintiffs allege that the DOL misapplied the doctrine established in the DOL Wage Appeals Board decision In the Matter of Fry Bros. Corp., WAB No. 76-06, slip op. at 17 (June 14, 1977).  They further allege that the DOL "arbitrarily ignored substantial evidence establishing that unionized wage rates and work classifications were so diverse that the assignment of all work on the projects to the painters classification could not properly be characterized as 'prevailing' within the meaning of the Act and published regulations."  Compl. at ¶ 35 [Dkt. No. 1].  They allege that the DOL's reliance on the limited area practice survey by which the investigator assessed each plaintiff's wage liability violated the DBA and APA.  The plaintiffs also allege generally that "[t]he DOL's findings were not supported by substantial evidence, were arbitrary and capricious, and constituted an abuse of discretion."

## IV.  DISCUSSION

### A. Source of Jurisdiction

As the Secretary notes, the APA is not an independent source of jurisdiction. Califano v. Sanders, 430 U.S. 99, 104-07 (1977); Lunney v. United States, 319 F.3d 550, 557 (2d Cir. 2003).  "District courts . . . require no further statutory authority to hear appeals from agency decisions than the federal question jurisdiction set forth at 28 U.S.C. § 1331."  Clark v. Commodity Futures Trading Com'n, 170 F.3d 110, 113 n.1 (2d Cir. 1999).  Because the plaintiffs assert claims pursuant to the APA, the Due Process Clause of the federal Constitution, the DBA and implementing regulations, and federal common law, their claims arise under federal law.  See Erwin Chemerinsky, Federal Jurisdiction § 5.2.1 (4th ed. 2003).  The court therefore has a basis for jurisdiction.

### B. The APA and the Binghamton Rule

Section 702 of the APA "waives the federal government's sovereign immunity in actions brought under the general federal question jurisdictional statute, 28 U.S.C. § 1331."  Lunney, 319 F.3d at 558 (citing Califano, 430 U.S. at 105); see also Borrelli v. Secretary of Treasury, 343 F.Supp.2d 249, 253-54 (S.D.N.Y. 2004) ("Because this action is being maintained against the federal defendants in their official capacities, the burden rests upon the plaintiffs to identify specific waivers of sovereign immunity applicable to their claims.").  Thus, the court must decide whether the present action is reviewable under the APA in order to determine whether the claims are barred by sovereign immunity.

6

The DBA was enacted to protect employees rather than contractors, and the correctness of wage determinations made by the Secretary pursuant to the DBA is not subject to judicial review.  United States v. Binghamton Constr. Co., 347 U.S. 171, 177 (1954); see Univs. Research Ass'n v. Coutu, 450 U.S. 754, 761 n.10 (1981) (citing Binghamton); United States v. Grace & Sons, Inc. 384 U.S. 424, 425 n.1 (1966) (citing Binghamton).   The Binghamton rule prohibits review of the correctness of the Secretary's decisions in setting prevailing wage rates for certain job classifications on a project, see Grace & Sons, Inc. 384 U.S. at 425 n.1 ("This court has indicated that, as to the wage standards set by the Secretary of Labor, there is no judicial review.") (citing Binghamton, 347 U.S. at 177)).  It further prohibits review of "the correctness of departmental decisions regarding proper classification of workers," Mistick PBT v. Chao, 2004 U.S. Dist. LEXIS 28536 (D.D.C. July 27, 2004) (internal citations omitted); see Carabetta Enterprises, Inc. v. Harris, No. 78-0253, 1979 WL 1907, at *2 (D.D.C. May 30, 1979) (holding that a claim was unexhausted and further unreviewable because "[a] determination of the proper job classification, such as was the issue in this case, is considered to be a part of the wage determination process and is therefore likewise not subject to judicial review."); Framlau Corp. v. Dembling, 360 F.Supp. 806, 809 (E.D.Pa. 1973) ("We agree that a decision of the Secretary of Labor regarding the scope of a classification is part of the wage determination process and exclusively within his jurisdiction and that the correctness of his determination of wage rates is not subject to judicial review.") (internal citations omitted); see also Coutu, 450 U.S. at 761 & n.10 (stating the Binghamton rule in the context of a contractor's objection to the DOL's classification of workers on a DBA-covered project).  Federal courts may,

7

however, review the Secretary's wage determination for violations of due process or statutory or regulatory violations.  See Virginia ex. rel. Comm'r, Virginia Dep't of Highways & Transp. v. Marshall, 599 F.2d 588, 592 (4th Cir. 1972); Abhe & Svoboda v. Chao, No. 04-1973 (D.D.C. Sept. 21, 2005) (citing Califano, 430 U.S. at 109[4]); Mistick PBT d/b/a Mistick Constr. v. Chao, No. 03-1767, slip. op. at 7 (D.D.C. July 27, 2004) (citing Tele-Sentry v. Secretary of Labor, 119 Lab. Cas. (CCH) ¶ 35,534, 1991 WL 178135 at * 4 (D.D.C. Aug. 30, 1991).

Although the correctness of the Secretary's wage determinations is not reviewable, the court finds that the practices and procedures followed by the Secretary and her designees in interpreting the DBA and regulations promulgated thereunder are subject to the APA's judicial review provisions, 5 U.S.C. § 701 et. seq.  Under the APA, courts presume that they may review agency action except "to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a); see Riverkeeper, Inc. v. Collins, 359 F.3d 156, 164 (2d Cir. 2004).  "[S]ection 701(a)(1) forecloses judicial review 'when Congress has expressed an intent to preclude judicial review.'" Id. (quoting Heckler v. Chaney, 470 U.S. 821 at 830).  As other circuits have held, neither the language nor legislative history of the DBA show an intent to completely preclude judicial review, even though the Binghamton rule remains good law.  See Marshall, 599 F.2d at 592 ("The Act and its history reveal no 'clear and convincing' evidence of a Congressional intent to preclude

---

[4] Califano did not address the Davis-Bacon Act, but it stated that, "when constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the extraordinary step of foreclosing jurisdiction unless Congress' intent to do so is manifested by clear and convincing evidence."  430 U.S. at 109 (internal citations and quotation marks omitted).

review of these practices and procedures for compliance with constitutional, statutory and procedural requirements.") (citing <u>Califano v. Sanders</u>, 430 U.S. 99 , 109 (1977) and <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 141 (1967)); <u>see also</u> <u>North Georgia Bldg. & Constr. Trades Council v. Goldschmidt</u>, 621 F.2d 697, 707-08 (5th Cir. 1980) (holding that the DBA does not preclude review of a Wage Appeals Board [ARB predecessor] decision as to applicablity of the DBA, as distinct from the wage determination itself).

"'[E]ven where Congress has not affirmatively precluded review,' . . . section 701(a)(2) forecloses review 'if the statute [governing the agency's actions] is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," <u>Riverkeeper</u>, 359 F.3d at 164 (quoting <u>Chaney</u>, 470 U.S. at 830).  "In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely.'" <u>Riverkeeper</u>, 359 F.3d at 164. The DBA states that "[t]he minimum wages [to be specified in contracts covered by the DBA] shall be based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed, or in the District of Columbia if the work is to be performed there."  40 U.S.C. § 3142.  Although the DBA does give the Secretary a large amount of discretion in terms of the procedure for setting prevailing wages, <u>see</u> <u>Building & Const. Trades' Dep't, AFL-CIO v. Donovan</u>, 712 F.2d 611, 615 (D.C. Cir. 1983), the DBA does not commit the decisionmaking as to the applicability of the DBA or of specific wage rates to the Secretary's judgment "absolutely."  Rather, it requires the Secretary to look

9

at the wages of workers performing similar tasks on non-government contracts in the locality in which a covered contract is being performed to determine prevailing wages and their applicability, id. at §1342, specifies the types of contracts to which the DBA will apply, id. at §3142(a) & 3149, and instructs the Secretary to promulgate regulations to govern contractors and subcontractors performing work on DBA-covered contracts, id. at § 3145.  DOL regulations provide rules for how a prevailing wage is determined, as well as specific procedures for investigations, enforcement actions, and review by an ALJ and the ARB.  See 29 C.F.R. Part 5.  Moreover, as the Fourth Circuit has held, "[t]here is law to apply" in determining whether the Secretary followed proper procedure with respect to the present contract, because "[p]rocedures for compliance with [the Secretary's] mandate have been developed through agency regulations and practices and through decisions of the Wage Appeals Board." Virginia ex rel. Comm'r, Virginia Dep't of Highways & Transp. v. Marshall, 599 F.2d 588, 592 (4th Cir. 1979).  The Secretary does not have unfettered discretion.  Cf. Lunney v. United States, 319 F.3d 550 (2d Cir. 2003) (holding that the Navy had unfettered discretion in possessing a Medal of Honor awarded to a deceased soldier, where the plaintiff cited no statutes mentioning the Navy, and no regulations).  Thus, the APA judicial review provisions apply to the DBA. See, e.g., Coutu, 450 U.S. at 761 n.10 (taking no position on the issue but citing Virginia ex rel. Comm'r, Dep't of Transp. v. Marshall, 599 F.2d 588, 592 (4th Cir. 1979) and North Georgia Bldg. & Constr. Trades Council v. Goldschmidt, 621 F.2d 697, 707-708 (5th Cir. 1980) (holding that the issue of the applicability of the DBA was subject to judicial review) and citing as comparison Fry Bros. Corp. v. HUD, 614 F.2d 732 (10th Cir. 1980) (holding that judicial review of DOL determination of what

10

wage scale was required under DBA was "limited to challenges to the procedure under due process standards" and that the APA does not create an independent basis of jurisdiction, but not squarely addressing whether the language of APA section 701 encompasses or excludes the DBA)); North Star Indus. v. Reich, 67 F.3d 307 (unpublished decision referenced in table of decisions), 1995 U.S. App. LEXIS 28343, at *2-*3 (9th Cir. 1995) ("The district court . . ... correctly held that the Administrative Procedures Act (APA) governs review of decisions made by the Wage Appeals Board [the predecessor to the ARB]."); see also, e.g., L.P. Cavett Co. v. DOL, 101 F.3d 1111 (6th Cir. 1996) (applying APA judicial review provisions to review Wage Appeals Board decision in enforcement action).

### C.  Individual Claims

#### 1.  Count I: Estoppel

Count 1 asks this court to estop the DOL from imposing liability on the plaintiffs for alleged misclassification of employees that resulted from affirmative conduct or misrepresentations by the ConnDOT.  The Complaint states that this claim is "consistent with and compelled by the Administrative Procedure Act, 5 U.S.C. § 701 as well as by Campbell's and Daskal's constitutional right of due process under law." Compl. ¶ 35.  Estoppel is not a due process claim, see Abhe & Svogoda v. Chao, No. 04-1973 (JR), slip op. at 4 (D.D.C. Sept. 21, 2005) (reviewing the same ARB Decision as that before this court), and the court cannot directly review the actions of ConnDOT.

The court has the authority to review the ARB's decision on the estoppel question under the standards of APA section 706, insofar as it is alleged to be "arbitrary and capricious, an abuse of discretion" and "not in accordance with law."  However, the

ARB conducted a thorough analysis to support its holding that the DOL could not be estopped by actions of a contracting agency.  ARB Decision at 29-32.  [Dkt. No. 9-2].  It reached this conclusion in a manner that was neither arbitrary and capricious, nor an abuse of discretion, nor in conflict with the law.  It correctly concluded that estoppel by the government is rare, ARB Decision at 29 (citing Hecker v. Community Health Serv., 467 U.S. 51, 59 (1984)), and that it requires a showing of affirmative misconduct by the government that is greater than negligence, id. at 30 (citing Dantran, Inc. v. U.S. DOL, 171 F.3d 58 (1st Cir. 1999) (denying estoppel claim where DOL investigator stated that he found no irregularities in plaintiff's payroll practices and employees of contracting agency made similar statements, and the DOL later commenced an enforcement action against plaintiff for pre-existing illegal payroll practices)).  After considering a number of administrative and judicial precedents, see id. at 30-31 (citing L.T.G. Constr. Co., WAB Case No. 93-15 (Dec. 30, 1994); Griffin v. Reich, 956 F.Supp. 98, 100 (D.R.I. 1997); Lloyd T. Griffin v. Sec'y of Labor, ARB Nos. 00-032, -033, ALJ No. 91-DBA-94 (ARB May 30, 2003); Prometheus Dev. Co., WAB No. 81-02 and 81-03, slip. op. at 9 (Aug. 19, 1984); Dantran, 171 F.3d), it concluded that only the Secretary or her designee, and not the contracting agency, has the authority to interpret the DBA.[5]  When the Complaint is read alongside the ARB decision, even taking all facts alleged in the Complaint as true, it does not state a claim upon which relief can be granted on the

---

[5]The court further notes that, under the Portal to Portal Act, 29 U.S.C. § 259, only a written ruling of the Secretary of Labor can be relied upon as a defense against liability for wages which must be paid under the Davis-Bacon Act."  Tele-Sentry Secur., Inc. v. Secretary of Labor, 119 Lab. Cas. (CCH) P35,534 (D.D.C. 1991) (internal citation omitted).

ground that the ARB denial of plaintiffs' estoppel claim was arbitrary and capricious, an abuse of discretion, or not in accordance with law.

### 2. Count II: Lack of Fair Warning

The plaintiff's second claim is reviewable because it sufficiently alleges a due process violation.  "Due process requires that before a criminal sanction or significant civil or administrative penalty attaches, an individual must have fair warning of the conduct prohibited by the statute or the regulation that makes such a sanction possible."  County of Suffolk v. First Am. Real Estate Solutions, 261 F.3d 179, 195 (2d Cir. 2001) (citing, among other cases, Gen. Elec. Co. v. EPA, 53 F.3d 1324, 1328-29 (D.C.Cir.1995) (reviewing EPA enforcement action and holding that EPA could not assess fine where plaintiff did not have fair warning of EPA's interpretation of unclear regulation)).  The plaintiffs allege that the DOL failed to give them fair warning of the wage rate at which they should have paid certain workers on the Gold Star projects, and that the ARB nevertheless upheld the assessment of wage liability against the plaintiffs for underpaying these workers.  They have alleged a deprivation of property without due process of law such that this claim, like that in the recent Abhe-Svoboda decision, "plausibly implicates the due process clause." Abhe-Svoboda v. Chao, No. 04-1973, slip op. at 4 (D.D.C. Sept. 21, 2005).  In arguing that the court should not reach the same decision as the Abhe-Svoboda court, the Secretary argues that "[u]ndisputed facts" contained in the ARB Decision show that the Campbell had the notice of required wage rates it claims to have lacked.  Def.'s Reply Mem. Supp. Mot. Dismiss at 6 [Dkt. No. 17] ["Def.'s Reply"].  However, the Complaint itself disputes most of these facts,  see Compl. ¶¶ 9-17, 37, and the fact that the Secretary may

disagree with the Complaint's assertion that the plaintiffs lacked fair warning does not render the Complaint insufficient under Rule 12.  The fact that Daskal paid all of its employees at a lower wage rate than those that the Wage Decision specified for laborers or safety boat operators, Compl. ¶ 20 [Dkt. No. 1], see Def.'s Reply at 7 [Dkt. No. 17], is not necessarily germane to whether it had notice of the proper classifications.   Finally, the Secretary's argument that Campbell, and not the DOL, had the obligation to provide fair warning to Daskal regarding wage determinations does not persuade the court to dismiss Count II at this stage, because the plaintiffs allege that the DOL did not give either Daskal or Campbell fair warning that the Daskal "go-fers" were required to be paid at a laborer's rate.[6]   Count II states a cause of action.

### 3.  Count III:  Failure to Make Independent Findings

In Count III, the plaintiffs claim that the ALJ "made no independent findings or conclusions of law, but instead improperly adopted wholesale the post-hearing brief submitted by attorneys for the Administrator," thereby "abdicat[ing] his responsibility to make credibility determinations."  Compl. at ¶ 40.[7]  They allege that the ARB improperly upheld these actions.  This challenge does appear to be procedural and statutory, rather than a challenge to the correctness of the wage determination.  However, this court cannot directly review the ALJ action because it is not final, see

_____

[6]The court also notes that the DOL assessed wage liability against Daskal as well as Campbell, even though the regulation cited by the Secretary that a prime contractor is responsible for a subcontractor's compliance with wage rates and other clauses included in the contract pursuant to 29 C.F.R. § 5.5.  See id. § 5.5(a)(6).

[7]In an earlier paragraph, the Complaint states that the ALJ "adopted wholesale as his Decision virtually the entire post-hearing brief submitted by attorneys for the DOL."  Compl. at ¶ 27 (emphasis added).  Drawing all inferences in the plaintiff's favor and reading paragraphs 27 and 40 together, the court assumes that the decisions were identical for all relevant purposes.

supra, n.1.  Insofar as the Complaint alleges that the ARB improperly upheld the ALJ's failure to make independent findings of fact, that allegation fails to state a claim upon which relief can be granted.  The ARB decision itself states that it conducted a de novo review of the facts in the plaintiffs' case, ARB Decision at 9, 11 [Dkt. No. 9-2]; see Abhe & Svoboda, Inc. v. Chao, No. 04-1973, slip. op. at 4 n.3 (D.D.C. Sept. 21, 2005) (motion to dismiss petition for review of the same ARB ruling that is at issue in this case).  In the face of the ARB's detailed analysis of hearing testimony, including its independent review of the evidence, the plaintiffs' conclusory allegation that the ARB improperly upheld the ALJ's adoption of the Administrator's post-hearing brief cannot support a claim.

### 4.  Count IV: Arbitrary Findings as to "Prevailing Practices"

The fourth count challenges the ARB's decision for misapplying legal precedent with respect to a contractor's freedom to classify workers as it sees fit, In the Matter of Fry Bros. Corp., WAB No. 76-06 (June 14, 1977), as arbitrarily ignoring substantial evidence "that unionized wage rates and work classifications were so diverse that assignment of all work on the projects to the painters classification could not properly be characterized as 'prevailing' within the meaning of the [DBA] and published regulations," and conducting and relying on a limited area practice survey to determine prevailing wage rates, allegedly in violation of the DBA and the APA.  Compl. ¶¶ 41-43 [Dkt. No. 1].  Echoing the language of APA section 706, Count IV alleges that, "[t]he DOL's findings were not supported by substantial evidence, were arbitrary and capricious, and constituted an abuse of discretion."

Although final agency interpretations and applications of the DBA are generally reviewable under the standards of APA section 706, the <u>Binghamton</u> rule prevents the court from reviewing substantive findings of the ARB with respect to classification of workers or prevailing wage determination.  <u>See</u> Part IV.B., <u>supra</u> (describing APA review and scope of <u>Binghamton</u> rule).  No Second Circuit caselaw exists on this issue, but the United States District Court of the District of Columbia's consistent holdings to this effect persuade the court that plaintiffs seeking to challenge a DOL decision on classification of workers cannot circumvent <u>Binghamton</u> by requesting review under APA section 706.  <u>See</u> <u>Abhe-Svogoda</u>, No. 04-1973, slip op. at 4 ("And plaintiff's claim that the Department's findings were arbitrary, capricious, and unsupported by evidence (Count IV) is of course a request for the very judicial review that is not available after <u>Binghamton</u>."); <u>Mistick PBT d/b/a/ Mistick Constr. v. Chao</u>, No. 03-1767, 2004 U.S. Dist. LEXIS 28536 (D.D.C. July 27, 2004) (holding that a claim impermissibly challenged the correctness of a wage determination because it alleged no due process claims or viable regulatory violation claims, where the plaintiff requested a remedy that the district court could not grant without reviewing the correctness of the wage determination, and where the plaintiff offered specific suggestions to the court on how the workers should be classified; and recognizing that if the court did review the action, it would have done so under APA § 706); <u>Tele-Sentry Security, Inc. v. Secretary of Labor</u>, 119 Lab. Cas. (CCH) P35,534  (D.D.C. 1991) (holding that enforcement action challenging job classification of workers was barred by <u>Binghamton</u>); <u>Carabetta Enterprises, Inc. v. Harris</u>, No. 78-0253, 1979 WL 1907, at *2 (D.D.C. May 30, 1979) (same).  This line of cases appears consistent with the APA itself.   <u>See</u> 5 U.S.C. §702

16

("Nothing herein . . . affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground.").  Moreover, the Circuit court opinions that have held that the Secretary's practices and procedures are reviewable under the DBA are not inconsistent with such a conclusion.  See North Georgia Bldg. & Constr. Trades Council v. Goldschmidt, 621 F.2d 697 (5th Cir. 1980) (declining to review "correctness" of wage determination but reviewing the applicability of the DBA before an application for federal assistance was received by the contracting agency); Virginia v. Marshall, 599 F.2d 588 (4th Cir. 1979) (holding that claims were reviewable under the APA and were not barred by Binghamton because they alleged violations of DBA statutory directives and related regulations).  The Ninth Circuit's opinion in North Star Indus. v. Reich, 67 F.3d 307 (unpublished decision referenced in table of decisions), 1995 U.S. App. LEXIS 28343 (9th Cir. 1995), reviewed a DBA enforcement action under APA section 706 standards without any reference to the Binghamton rule, but the dispute in North Star involved an interpretation of a particular regulation promulgated under the DBA, and therefore would not have been barred by Binghamton.  See North Star, 67 F.3d at *1-*2.[8]  Similarly, in L.P. Cavett Co. v. DOL, the Sixth Circuit reviewed under APA standards, and without reference to Binghamton, a DBA enforcement action regarding the applicability of the DBA to employees hauling asphault to the project site. 101 F.3d 111 (6th Cir. 1996).  Again, the court's review focused on violations of particular statutory and regulatory language.  In light of the foregoing authorities, the

---

[8]Although Mistick, like North Star, involved an alleged regulatory violation, the Mistick court found no merit in that claim and concluded that the plaintiff was really seeking review of the correctness of a wage determination.  See 2004 U.S. Dist. LEXIS 28536, at * 12.

court must dismiss claims that seek substantive review of the correctness of the Secretary's prevailing wage determination, even where the plaintiff seeks review under APA section 706.

The plaintiffs' allegation that the DOL misapplied the <u>Fry Brothers</u> doctrine is unreviewable under the <u>Binghamton</u> rule.  The portion of <u>Fry Brothers</u> quoted in the ARB decision in plaintiffs' case cautioned that contractors have to abide by locality wage standards because,

> [i]f a construction contractor who is not bound by the classifications of work at which the majority of employees in the area are working is free to classify or reclassify . . . traditional craft work as he wishes, such a contractor can, with respect to wage rates, take almost any job away from the group of contractors and the employees who work for them who have established the locality wage standard.  There will be little left to the Davis-Bacon Act.

WAB No. 76-06, slip op. at 17 (June 14, 1977); <u>see</u> ARB Decision, ARB Case No. 01-069, at 12.  The ARB applied this doctrine to hold that Campbell should have paid a painters' wage to certain employees who collected grit at the bridge site, rather than the lower rate paid by Campell.  This determination involved the correctness of the wage determination and is not subject to judicial review.

The claim that the DOL "arbitrarily ignored substantial evidence establishing that unionized wage rates and work classifications were so diverse that assignment of all work on the projects to the painters classification could not properly be characterized as "prevailing" within the meaning of the [Davis-Bacon] Act and published regulations" is similarly unreviewable under <u>Binghamton</u>.  Although this claim makes reference to the DBA and DOL regulations, it does not allege any specific procedural requirements

18

that the ARB decision violated.  The DBA's only statement regarding the determination of a prevailing wage leaves determination of this wage largely to the Secretary's discretion:  "[t]he minimum wages [for a DBA-covered contract] shall be based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed." 40 U.S.C. § 3242.  The claim does not specify any particular regulation that was violated, but the allegation regarding diverse wage rates and classifications may be referring to 29 C.F.R. § 1.2(a)(1), which states,

> The prevailing wage shall be the wage paid to the majority (more than 50 percent) of the laborers or mechanics in the classification on similar projects in the area during the period in question. If the same wage is not paid to a majority of those employed in the classification, the prevailing wage shall be the average of the wages paid, weighted by the total employed in the classification.

However, the allegation does not state a claim for violation of this regulation, because the regulation permits the Secretary to determine a prevailing wage even where a single wage is not paid to a majority of workers in a particular classification, and does not constrain the Secretary's manner of classifying workers in areas where work classifications are diverse.

The court finds no other regulation on point.  Ultimately, this allegation is a claim that the Secretary incorrectly classified the Campbell debris collectors, and is not reviewable under Binghamton.

Next, the claim that the DOL improperly conducted and relied on the limited area practice survey is also unreviewable under Binghamton or the APA. The

19

Complaint alleges that the limited area practice survey violated the DBA, but the DBA creates no procedural rules for conducting or relying on such surveys in the process of an investigation.  Moreover, the survey is not a final agency action, and therefore the manner in which it was performed is not reviewable under the APA.  See 5 U.S.C. § 704; Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003).  With respect to the ARB's reliance on the survey, the plaintiffs do not specify any section of the DBA that such reliance violated, nor does this court find that the facts alleged would support a claimed violation of any such section. A review of whether the ARB correctly adopted the DOL investigator's conclusions under the standards of APA section 706 is barred by Binghamton, because it would require a review of the correctness of the Secretary's wage determination.

For the foregoing reasons, Count IV is dismissed.

**D. Requested Remedies**

In Abhe & Svogoda, the District Court for the District of Columbia determined that the plaintiff's claims were not reviewable under the APA, 5 U.S.C. § 701 et. seq., in part because the plaintiff requested "substantive," rather than "procedural," relief. No. 04-1973, slip. op. at 4.  Campbell and Daskal, similarly to Abhe & Svogoda, seek "a judgment declaring that the decisions of the DOL are erroneous and unenforceable and directing the Secretary of Labor to negate the back wages assessment against Campbell and Daskal."  Compl. at Prayer for Relief ¶ 3; see Abhe & Svogoda, slip op. at 4 n.2.  However, the instant plaintiffs also seek further relief in the form of preliminary and permanent injunctions restraining the DOL from implementing the

20

ARB's decision and any adverse findings of the Wage and Hour Administrator or the ALJ, as well as costs and attorneys' fees.

The court recognizes that the instant plaintiffs will not be able to obtain all of the relief they have requested, even if their suit is ultimately successful.  In particular, this court cannot, under the <u>Binghamton</u> rule, declare that the "decisions of the DOL are erroneous."  Compl. at prayer for relief ¶ 3 [Dkt. No. 1].  However, the <u>Binghamton</u> rule does not preclude all of the requested relief.  The fact that the plaintiffs have requested a remedy that is not available does not render otherwise reviewable claims unreviewable.

## V. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part the Secretary's Motion to Dismiss **[Dkt. No. 8]**.  Counts I, III, and IV are dismissed without prejudice to replead.  The court denies the motion to dismiss Count II, as described above, without prejudice to the Secretary to challenge this claim on summary judgment.

## SO ORDERED.

Dated at Bridgeport, Connecticut this 23rd day of January, 2006.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge